We'll move to our fourth case this morning, Viramontes v. Cook County. Mr. Patterson. Thank you, Your Honor. May it please the court, Pete Patterson, for the appellants. I'd like to reserve two minutes if I can. This court should reverse because the Second Amendment protects the right to own common semi-automatic rifles like the AR-15, whether under this court's BEVIS test or under the Supreme Court's dangerous and unusual test. Under BEVIS, the key question is whether semi-automatic rifles are predominantly useful for military purposes. And the answer is no. Indeed, no known military in the world uses a semi-automatic-only rifle for its standard service rifle, and the reason is that automatic fire is critical for certain military operations, including putting down suppressive fire. The BEVIS case already addressed the Cook County Ordinance and upheld it, albeit in a different procedural posture. It was a preliminary injunction appeal, but it was a comprehensive treatment of our precedent, Wilson and Friedman reaffirming it, essentially, as well as applying the Bruin methodology. Why isn't that conclusive here? You didn't put in any record that would undercut the BEVIS decision, which left at least some room for that to occur on remand in one of the cases that had come out the other way in the BEVIS collection of cases. But there was no such record developed here. Well, BEVIS left room for a different decision based on the record, and there is a substantial record in this case. We built a record showing that there is specific military applications for automatic fire involving putting down suppressive fire, engaging in fire superiority, certain military applications for that, and also making clear that the semi-automatic assault weapons, supposedly assault weapons that are at issue in this case, are the type of common firearms that everyday people would use in their homes for self-defense. That is the standard that BEVIS set forth. There was really no record development on your side in terms of expert witnesses or reports or production of any kind of factual or evidentiary basis for the argument that you're making? Your record, quote, unquote, came in response to the other side's Rule 56 statement, as I understand the record here. We produced over 2,000 pages of legislative fact materials in discovery. And just for purposes of this case, these are legislative facts. These are not the sort of facts that are at issue in a typical sort of case. I'm troubled, Mr. Patterson, by that. You say you produced documents, but many of the documents that you're relying on before us weren't mentioned below in the 56.1s. You're bringing them to us for the first time on appeal, which is troubling. And I know you've labeled them as legislative facts, but you've put in surveys, which are so often subject to Daubert challenges, and a lot of materials that the district court didn't have the opportunity to take the first run at on summary judgment. That's not true, Your Honor. The vast majority of the documents we've cited here, we can prevail ignoring anything we've brought to this court for the first time. I have a list of articles and surveys you're relying on here that you did not cite in your summary judgment briefing. If you look at both our affirmative summary judgment brief, which this court says you can do in Wise Miller. Yes, we put all our legislative facts in the argument section of the brief. And then in response to their statement of material facts, we, again, included over 2,000 pages of materials, including the NSSF surveys. Producing the materials, though, for the district court is very different than relying on them in your summary judgment and presenting them to the district court for the district court to consider. And that's – I find that troubling here. Well, again, these – again, this court can blind itself to the materials we're bringing to this court for the first time. The Wallace papers, the Chapman book, the English, the NSSF surveys, the Washington Post surveys, the data about the criminal misuse of these firearms, those are all in the materials that we submitted to the district court. So this is not a case in which, you know, we're blindsiding the district court. In any event, these are legislative facts. The only thing that is required is due process for the other side, notice and opportunity to be heard. They've had that in briefing here. And similarly, in Heller, when the Supreme Court announced – I don't have everything from the summary judgment before me now, but I don't think you cited the Wallace papers or included them in your 56.1. That's just one example. The Wallace papers are in our 56.1. It's at – and the Wallace lethality article is at record 1835. The Wallace myths article is at record 1904. The Chapman article is at record 2327. The Chapman books at record 3116. Just for example, all of these materials are in the materials that we submitted to the district court. We had a response to a specific finding of fact. One of their findings of fact, 270, about automatic firing. We specifically said that it's useful in battlefield situations, which call for suppressing fire. So we did not choose to do experts because it's not required in this context. In Heller, which established this dangerous and unusual standard, the solicitor general, in its brief, said we would need a remand so we can develop evidence on whether these are the type of firearms that people need. Ironically, the other side in that case was saying people should use rifles instead of handguns for self-defense. And the Supreme Court said, no, we're going to do that here. And what it relied on, when the Supreme Court said that handguns are the most common weapon used for self-defense, it cited to the Court of Appeals ruling in that case, which was decided on a motion to dismiss the district court, cited the Court of Appeals ruling, which in turn cited a survey, a published survey by Gary Kleck, saying that handguns are used for self-defense frequently. So it was the same type of material that the Supreme Court relied on in Heller. In Bruin, too, there was a call for a remand. Mr. Patterson, would we have to overrule Freedman and Wilson to find for you? You don't – the way I interpret Bevis is that it said Freedman and Wilson were abrogated by Bruin. They got a couple of things right, but this court had to engage in the Bruin analysis of Fresh because – Assume that Bevis said Freedman at least is still good law. Would we have to overrule it to find for you? If Bevis said that Freedman is 100% still good law and still binding, yes, I believe you would have to overrule that case because that case held that these sorts of statutes are constitutional. But that's not what this court did. This court said that Freedman correctly said we're not going to apply interest balancing, and Freedman correctly did not apply the common use test. Of course, we disagree with that. But then Bevis went on to say, well, we've got to apply Bruin, and here's the test we're going to apply. Are these predominantly military arms or are they arms typical people would have for self-defense? That's different from the Freedman test, which was whether these were arms that were in existence at the founding, have a reasonable relationship to the militia, and leave alternatives for other people to use. So it's a different test, and plus there would have been no point for this court saying we're going to remand to see if the plaintiffs can still prevail if all it was doing was saying we're just reaffirming Freedman, which had already determined that question on a final judgment. I have two minutes that I've saved for rebuttal, but I'm happy to address other questions that the court has now. Thank you. Thank you. Ms. Scheller. Good morning. May it please the court, Assistant State's Attorney Jessica Scheller, appearing on behalf of Defendants Kimberly Fox, Tony Preckwinkle, and Thomas Dart. Good morning, counsel. We are before the court this morning to address now for the third time whether a facial challenge can be appropriately raised as to the Cook County Firearms Regulation governing semi-automatic rifles and the like, otherwise known as assault weapons. We suggest three reasons to affirm. First, the plaintiffs have not offered this panel with a compelling reason to overrule circuit precedent, which is what Bevis, Freedman, and Wilson are. Contrary to my opponent's arguments, Bevis did not overrule Freedman, and that is clear because it was not circulated. There is not a footnote suggesting that it was circulated pursuant to Rule 4E, and that is how this court notes for practitioners that something has been circulated and overruled. Second, my opponent has elected from the outset of this litigation to forego the normal adversarial process the orderly presentation of facts and has avoided the local rules governing practice. Rule 56.1 requires that you put forth all material facts pursuant to which you would like the district court to rule in your favor. It is neither sufficient nor is it appropriate to add documents in your response to the other party's 56.1 statement as new affirmative facts which the court should consider. That is governed by Local Rule 56.2. The plaintiffs make no excuse for their failure to comply with Rule 56.1, nor do they deny that they've done it. Instead, they offer the rather troubling argument that parties are not required to present to the district court or even this court their full arguments upon which they believe they can prevail, but rather they may rely upon legislative facts spanning the scope of the universe which may be raised at any time for any reason in any argument under the doctrine of mere enlargement. We contend that that disrupts the litigation process. It renders moot the actions of the district court, and it also makes it difficult for parties to develop a record upon which this court can adjudicate cases on the merits. That position is also especially dangerous in the context of this new world that we're living in under Bruin where the history and tradition analysis or methodology that's required takes us outside our usual domain of evaluating actual transactional facts and into the world of 18th century history and, to a limited extent, 19th century history. We agree, Your Honor, and we point out as an example of this type of problematic legislative fact-jumping in terms of the English report upon which my opponent relies and to which he cited in his opening argument. The English report has been refuted by various other intellectuals. However, it is not something that we were able to test as it was not disclosed in accordance with the expert discovery schedule, nor was it properly placed before the court in Rule 56.1 briefing. We did seek relief from the district court under Rule 56.1 related to the plaintiff's legislative fact-jumping in response to our statement of material facts. However, we think that there are significant problems with the English methodology in his use of surveys, which we certainly would have challenged in the district court, however, have no meaningful opportunity to do in this jurisdiction. The appellate rules do not really provide for the adjudication of facts, and so while there may be some legislative facts, many or all, with which we would have agreed, that opportunity was not one that we had in this litigation because my opponent chose not to participate in discovery. The other point that we'd like to raise to the court's attention as we're engaging in this new dance with the Bruin test is that post-Bevis, both Rahimi and the Bianchi case lent support to this circuit's resolution of this case in favor of regulation. Let's follow up on that, Ms. Scheller. Bevis court determines that AR-15 and certain other weapons are not arms at Step 1 of Bruin. At the same time, Bevis said the burden is on the plaintiff to show that an arm falls within the scope of the Second Amendment. Does the Bevis rule effectively shift the historical burden from the government to the plaintiff? No, I don't believe so, Your Honor. In our briefing, both in this case and on Bevis, we have made alternate arguments that the burden could rely with the government or with the plaintiff. However, I don't believe that Bevis affirmatively does that, particularly because in the record before the court on that case, all of the record evidence concerning the similarities and dissimilarities between the M-16 and AR-15 were raised through the defendant's experts, the same experts which are properly in the record before the court here today. But why wouldn't the legal standard have flipped that burden if one is moving the historical tradition analysis in the manner that Bevis did? I'm sorry, Your Honor. Could you clarify? If Bevis is correct with regard to where that analysis is to be done, isn't the burden then on the plaintiff to show that an arm falls within the Second Amendment? What I'm worried is that the Bevis rule has effectively shifted that historical burden. I do not believe that that is the Bevis rule. The Bevis rule says that arms within the text of the Second Amendment are presumptively constitutional unless the government refutes that with history and tradition supporting regulation. And in the Bevis case, the government did bring forth history and tradition of regulation, as well as showing that in the analysis of the text there were problems such as common use and dangerous and unusual weapons. Now, if we were to look at the Supreme Court's opinion in Bruin, the common use analysis is part of the textual analysis. It is not placed in the text in the history and tradition section such that it does lead the practitioner, and we suggest this court to determine that the common use test is part of the first textual analysis. And you're basing that on the placement within the opinion? Is that it? Yes, Your Honor. Thank you. Returning to Rahimi, it is important to note that an overwhelming majority of the Supreme Court in that case instructs us that the law is not trapped in amber. And specifically, if there was a particular problem regulated by the founders and a contemporary law addresses a similar problem for a similar reason in a similar manner, it is likely permissible regulation. And we contend that that is what is happening here. Dating back to the statute of Northampton, courts have regulated the manner in which persons can use weapons to terrorize other persons. We suggest that the Cook County Ordinance addresses the same problem for the same reason and therefore is legally permissible under that analysis. Further still, the Supreme Court clarified in Rahimi that we are not just looking to an analogous regulation. We are not trying to fit our ordinance into a direct analog, though we have certainly tried, such as gunpowder or spring guns. But rather, we are to analyze the contours of the right as it was understood by the framers and the persons of that time. And it is without question, it is without exception, that there has always been a cornerstone principle of retreat in the law of self-defense. And there has always been a moderation principle as it regards the use of deadly force against another person. Our law has a continuing, unbroken American tradition of not permitting the use of more force than is necessary in self-defense to ward off an attacker. And this record is replete with examples of the performance capacities of these firearms, such that that moderation principle cannot be honored by the use of this weapon. Unless the panel has any further questions, I yield the remainder of my time. Ms. Schiller, I have one more, please. So this is a facial challenge, and the focus in the record has been on AR-15s. But there are a lot of other guns in the ordinance, which seems problematic that there's no effort to show that there's no constitutional or that no application of this could be constitutional. We agree, Your Honor. That wasn't something that was put forth in the briefing, and I wasn't sure why. We would suggest that the burden falls upon my opponent to show that it cannot be lawful in any application. They have elected to stand on the AR-15 as the weapon of choice selected by Mr. Viramontes, and that, therefore, has been our focus. However, there are various instruments within the ordinance, each of which could be separately analyzed, but none of which have, and certainly not by the plaintiff here. Thank you. Thank you. Thank you. Mr. Patterson. Thank you, Your Honors. First, with respect to was Freedman overruled by because. Our point is not that it was overruled. It was recognized as abrogated. That's why it didn't have to be circulated. We dispute that we did not comply with Rule 56.1. We put all of our adjudicative facts in our 56.1 statement, and they elected to put their legislative facts there, so we responded to them, as Rule 56.1 says. In a response, you can include responsive factual materials. The English report is the same type of report as the CLEC report. The Supreme Court indirectly relied on Neller, but in any event, we don't need the English report. We have a similar Washington Post survey. Nobody is accusing the Washington Post of being unduly favorable to gun rights. And also the Supreme Court in Staples called the AR-15 rifle a civilian, commonplace, generally available, and traditionally lawful firearm. That is the definition of a weapon that's protected by the Second Amendment. Mr. Patterson, this is a facial challenge, correct? Yes. What about the other 50-plus guns? I haven't seen anything trying to argue that the application is unconstitutional as to every one of those guns. We're challenging it with respect to semi-automatic rifles. The AR-15 is a paradigmatic semi-automatic rifle. There is nothing that would distinguish the AR-15 from any of those other firearms for constitutional purposes. To the extent there would, that would only affect the scope of the relief. What are you relying on for that? I mean, you have a Barrett Model 82A1, which looks like a semi-automatic sniper rifle. There's nothing. Well, they're all semi-automatic rifles. Semi-automatic rifles are common rifles. We focus on the paradigmatic one for terms of briefing. And so, again, at most, that would go to the scope of the remedy. We would still prevail with respect to AR-15 and the AK-47 type that our other plaintiff wants to own. And I could make one final point about the placement in Bruin of the common use analysis at page 32. That was not a textual discussion. The court said these firearms are in common use, handguns, so we don't have to address them at all. And so then we moved to the textual argument with respect to carry, but it never came back to history with respect to handguns because that was text and history. So, actually, that discussion supports us. That became part of the discussion. Yes. Thank you. Thank you. Thanks to all counsel. The case will be taken under advisement.